IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JAMES TIMOTHY GWATNEY,    )
    )
    Plaintiff,    )
    )
    )    CIV-06-567-L
v.    )
    )
JO ANNE B. BARNHART,    )
  Commissioner of Social Security    )
  Administration,    )
    )
    Defendant.    )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying his concurrent applications for disability insurance and

supplemental security income benefits under Titles II and XVI of the Social Security Act,

42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the

administrative record (hereinafter TR___). The matter has been referred to the undersigned

Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the

following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed his applications for benefits on August 22, 2003, alleging that he

became disabled on May 16, 2003, due to spinal degeneration, cervical and lumbar spurs,

cartilage compression, sciatic nerve problems, bulging disc, bipolar disorder, depression, anxiety, and psychosis. (TR 85).  Plaintiff has a twelfth grade education and previously worked as a carpet cleaner, health care aide, oil field worker, and warehouse worker. (TR 86, 91, 99).  Plaintiff's applications were administratively denied.  (TR 27, 28, 239, 243).  At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Parrish ("ALJ") on July 19, 2005, at which Plaintiff and a vocational expert ("VE") testified. (TR 258-279).

At this hearing, Plaintiff stated that he could not work due to back, neck, shoulder, and hand pain and limitations as well as bipolar disorder.  Plaintiff estimated that he could sit for 20 minutes, stand for 20 to 30 minutes, walk two blocks, and lift 15 pounds.  (TR 272-273). Plaintiff testified that he was not receiving medical treatment for his back, neck, shoulder, or hand pain because of a lack of finances.  However, Plaintiff stated he had been approved for "charity" treatment at the O.U. Medical Center and was scheduled to see a primary care physician the day after the hearing. (TR 268).  Plaintiff testified he had received mental health treatment for two to three years at Hope Community Services, including a socialization program that he attended about three days a week, anger management counseling, therapy for "personal" issues, and medication management from his treating psychiatrist, Dr. Al-Khouri.  (TR 263, 268-270).  Plaintiff testified he took four medications for bipolar disorder. (TR 270).

At the hearing, the VE described the vocational characteristics of Plaintiff's previous jobs. (TR 276).  In response to hypothetical questioning, the VE provided testimony as to the

availability of jobs for an individual who could perform light work with occasional stooping, kneeling, and crouching, repetitive, one and two step tasks, and low stress levels. (TR 276-277).

Following the hearing, the ALJ issued a decision in which the ALJ found that Plaintiff has severe impairments due to bipolar I disorder and cervical and lumbar strain. (TR 17, 23). The ALJ further found that these impairments were not disabling *per se* and that despite these impairments Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level limited to occasionally bending forward at the waist, occasionally bending at the knees to come to rest on the knees, and occasionally bending downward by bending the legs and the spine. (TR 21).  Additionally, the ALJ found that Plaintiff was limited to jobs requiring only simple, unskilled, one to two step, repetitive tasks and routine, repetitive, low stress work. (TR 21).

Relying on the VE's testimony with respect to the availability of jobs for an individual with this RFC for work, the ALJ found that Plaintiff was precluded from performing his previous jobs but was capable of performing other jobs available in the economy, including the jobs of parking lot attendant, cleaner/housekeeper, and usher. (TR 21-22).  Based on these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 23-24).  The agency's Appeals Council declined to review the ALJ's decision. (TR 6-8).

II. Plaintiff's Claims and Commissioner's Response

Plaintiff appeals the Commissioner's final decision, embodied in the ALJ's decision,

3

denying his applications for benefits.  Plaintiff contends that the ALJ failed to give the proper weight to the opinion of his treating psychiatrist, Dr. Al-Khouri, that Plaintiff was unable to work due to his mental illness.  Plaintiff further contends that the ALJ failed to state the specific weight, if any, given to Dr. Al-Khouri's opinion.  Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ ignored Dr. Al-Khouri's opinion concerning Plaintiff's mental limitations.  Finally, Plaintiff contends that the ALJ erred in determining the credibility of Plaintiff's assertion of disabling pain and mental limitations by failing to discuss the evidence in the record supporting the credibility determination, by relying on Plaintiff's minimal daily activities, and by basing his credibility determination on "mistaken observations" from the medical record. Plaintiff's Brief, at 9-10.

III. Standard of Review

Judicial review of this Complaint is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied.   Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996).  The court may not reweigh the

evidence or substitute its judgment for that of the Commissioner.  Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992).  However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f) (2006); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail).  Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

IV. Treating Physician's Opinion

The record reflects that Plaintiff sought mental health treatment at Hope Community Services, Inc. beginning in May 2003. An initial assessment of Plaintiff was conducted at the

clinic on May 5, 2003.  At that time, Plaintiff stated he was homeless, misplaced things, and had insomnia, nightmares, panic attacks, anxiety, unmanageable anger, and depression. (TR 223).  Plaintiff reported one previous hospitalization at age 22 for mental health problems and also reported that he was taking two medications for mental health problems. (TR 223). Plaintiff stated he was employed as a carpet technician but was also temporarily and permanently disabled. (TR 221).  Dr. Al-Khouri conducted an initial psychiatric evaluation of Plaintiff at the clinic on June 5, 2003.  Plaintiff complained of irritability, anger, depression, mood swings, and "hearing voices" for the previous month, and Plaintiff reportedly denied having any significant physical problems. (TR 198).  Based on an interview and mental status evaluation, Dr. Al-Khouri diagnosed Plaintiff with bipolar I disorder, most recent episode mixed, with psychotic features.  (TR 198).  Dr. Al-Khouri prescribed medications, including anti-anxiety, anti-depressant, and anti-psychotic medications, as well as a sleeping aid. (TR 199).

The record reflects three more visits by Plaintiff to Dr. Al-Khouri for medication management.  In October 2003, Dr. Al-Khouri noted Plaintiff reported he was doing well on the medications and was not experiencing side effects. (TR 210).  In a mental status evaluation, Dr. Al-Khouri reported Plaintiff was alert, oriented, and exhibited intact memory, appropriate affect, euthymic mood, and no psychotic features.  The previously-prescribed medications were continued.  In February 2004, Dr. Al-Khouri noted Plaintiff again reported he was doing well on the medications and experiencing no side effects. (TR 201).  In a mental status evaluation, Dr. Al-Khouri noted Plaintiff was alert, oriented, and exhibited

intact memory, restricted affect, irritable mood, occasional depression, and no psychotic features. His medications were continued, except that the sleeping medication was changed. In June 2004, Dr. Al-Khouri noted Plaintiff again reported he was doing well on the medications and experiencing no side effects. (TR 197). A mental status evaluation was normal, and Plaintiff's medications were continued.

In August 2005, Dr. Al-Khouri authored a letter addressed "To Whom It May Concern" in which Dr. Al-Khouri stated that Plaintiff had been his patient since 2003, that Dr. Al-Khouri had diagnosed Plaintiff as having bipolar I disorder, most recent mixed with psychotic features, and that Plaintiff "has been unable to sustain gainful employment due to the severity of the illness." (TR 230).

Plaintiff contends that the ALJ improperly disregarded this opinion. Further, even if the psychiatrist's opinion was not entitled to controlling weight, Plaintiff contends that the ALJ erred by failing to express what weight he gave the opinion.

In evaluating the opinion of a treating physician, an ALJ must determine whether the opinion should be given controlling weight. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003)(internal quotations omitted). To reach this decision, "an ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." Id. If not, then the evaluation at this stage ends. If the opinion is found to be well-supported, the ALJ must then consider whether the opinion is consistent with other substantial evidence in the record. Id. If the opinion is neither well-supported nor consistent with other substantial evidence in the record, then it is not entitled to controlling

weight. Id.

If it is determined that the opinion is not entitled to controlling weight, the opinion is still entitled to deference, and the ALJ must evaluate the opinion in light of the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  In the event this evaluation leads to a determination to ascribe either diminished weight to the opinion or to reject it altogether, the ALJ must provide reasons for the decision "that are sufficiently specific to make clear to any subsequent reviewers the weight [given] to the treating source's medical opinions and the reason for that weight." Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(internal quotations omitted).

The ALJ's decision reflects consideration of the opinion by Dr. Al-Khouri.  The ALJ declined to give the opinion controlling weight, however, and reasoned that the psychiatrist's conclusion "whether the claimant has the capability to work is an opinion on an issue of disability reserved for the Commissioner (SSR 96-5p).  While Dr. Al-Khouri's opinion is probative, it is not determinative of the issue of disability." (TR 20).  Dr. Al-Khouri's opinion sets forth his diagnosis but provides no medical findings of functional limitations related to the psychiatrist's diagnosis.  A treating physician's opinion on the ultimate issue of disability is not a "medical opinion" but an opinion on an issue relegated to the Commissioner pursuant to 20 C.F.R. §§ 404.1527(a)(2), (e)(1) and 416.927(a)(2), (e)(1).  Thus, the ALJ did not err in refusing to give the opinion controlling weight.

In determining what weight to give Dr. Al-Khouri's opinion, the ALJ properly considered whether the opinion was supported by the psychiatrist's own records. 20 C.F.R.

8

§§ 404.1527(d), 416.927(d).  The ALJ reasoned that the psychiatrist's opinion was "not substantiated by the clinical findings subsequent to his initial psychiatric evaluation in June 2003, and is inconsistent with the other evidence of record.  The medical evidence shows the claimant was seen only occasionally by Dr. Al-Khouri.  He was generally reported to be doing fairly well on his medications without adverse side-effects." (TR 20).  Based on these reasons, the ALJ determined that Dr. Al-Khouri's opinion was entitled to "little weight" in the determination. (TR 20).

There is substantial evidence in the record to support this assessment of the weight to be ascribed to Dr. Al-Khouri's opinion.  Dr. Al-Khouri's office notes reflect he saw Plaintiff four times over a twelve month period, and during this brief treatment period Dr. Al-Khouri's notes do not reflect persistent findings of significant mental deficits.  Plaintiff points to his own subjective statements contained in the treating clinic's records and asserts that his statements should have been addressed by the ALJ in assessing the weight to be given to Dr. Al-Khouri's opinion.  The first statements to which Plaintiff refers were made during the initial interview of Plaintiff in June 2003 at the treating clinic. (TR 215-216).  The Plaintiff refers to a second group of statements made by Plaintiff during an interview at the treating clinic in January 2004.  (TR 208-209).  These written "assessments" do not contain findings by clinical personnel of functional limitations supporting Dr. Al-Khouri's opinion of total disability.  The written "assessments" are not even signed by a professional treating staff member.  Contrary to Plaintiff's assertion that the ALJ "interject[ed] [his] own medical opinion" in determining the weight to be given Dr. Al-Khouri's opinion, the ALJ properly

considered the office notes of Dr. Al-Khouri and the findings therein relevant to the severity of Plaintiff's functional limitations stemming from his mental impairment. A conclusion that the medical evidence contained in the treating physician's records is simply inconsistent with the treating physician's opinion is not impermissible interjection of an ALJ's own medical opinion.

The ALJ specifically stated that Dr. Al-Khouri's opinion was entitled to "little" weight in the determination. Thus, the ALJ did not fail to specify the weight he accorded Dr. Al-Khouri's opinion. The ALJ did not ignore Dr. Al-Khouri's opinion, but considered the opinion and concluded that the opinion was not entitled to controlling weight or more than "little" weight in view of its inconsistency with the psychiatrist's treatment records. No error occurred in this regard.

V. RFC Determination

Plaintiff contends that the ALJ erred in determining Plaintiff's RFC for work in light of his severe mental and physical impairments. At the fourth and fifth steps of the evaluation process required of administrative factfinders, the ALJ is required to determine whether the claimant retains the RFC to perform the requirements of his or her past relevant work or other work that exists in significant numbers in the economy. At step four, the claimant bears the burden of proving an inability to perform the duties of past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual

10

to return to the past occupation, given his or her [RFC]." <u>Henrie v. United States Dep't of Health & Human Servs.</u>, 13 F.3d 359, 361 (10th Cir. 1993).  The assessment of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." <u>Diaz v. Secretary of Health & Human Servs.</u>, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." <u>Huston v. Bowen</u>, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

With respect to the ALJ's RFC finding, Plaintiff first contends that the ALJ erred by failing to include limitations in the RFC determination that were found by Dr. Al-Khouri. Plaintiff specifically asserts that "in response to a hypothetical question that incorporated Gwatney's limitations as identified by Dr. Al-Khouri the VE [sic] no work would be available." Plaintiff's Brief, at 8.  Plaintiff asserts that the ALJ failed to incorporate all of Plaintiff's impairments in the RFC finding when he "ignor[ed] Dr. Al-Khouri's limitations...." Plaintiff's Brief, at 8.

The ALJ found that Plaintiff has the RFC to perform work at the light exertional level with additional physical and mental restrictions, including jobs that require only repetitive, one and two step tasks, and low stress.  In asserting that the ALJ erred by not including "limitations" as found by Dr. Al-Khouri, Plaintiff refers only to Dr. Al-Khouri's opinion that Plaintiff is unable to work.  However, as the undersigned previously found, Dr. Al-Khouri's

11

opinion did not set forth findings of functional limitations supporting his conclusory opinion and his office notes of treatment of Plaintiff did not contain findings of functional limitations consistent with his opinion of total disability. Thus, the ALJ did not err in failing to adopt Dr. Al-Khouri's opinion that Plaintiff is not able to work.

In determining Plaintiff's RFC for work, the ALJ addressed the credibility of Plaintiff's allegation of disabling pain and limitations resulting from his severe physical and mental impairments. The ALJ found that Plaintiff's assertion of disabling pain-related and mental-related limitations was not credible. The ALJ referred to specific medical evidence in the record with respect to Plaintiff's assertion of disabling pain. (TR 20). These reasons are well-supported by the medical record.

Concerning Plaintiff's assertion of disabling mental-related limitations, the ALJ reasoned that Plaintiff's "activities of daily living, although somewhat limited, are less restricted than at the beginning of this treatment for schizoaffective disorder. He drives, shops, and has friends. He lives alone. His psychological symptoms appear to be controlled with treatment and medications." (TR 20). Although Plaintiff challenges the sufficiency of this credibility determination, Plaintiff fails to point to objective evidence in the record which supports his assertion of disabling limitations caused by a mental impairment. Plaintiff merely posits the conclusion that "the medical record corroborates Gwatney's testimony." (TR 9).

The ALJ did not err in relying on objective medical evidence and Plaintiff's own testimony with respect to his daily activities in determining the credibility of Plaintiff's

assertion of disabling mental and physical impairments.  The record contains no objective evidence of significant functional limitations caused by a physical or mental impairment. The ALJ properly considered the objective medical evidence, noting that in June 2004 Dr. Al-Khouri's office notes reflect that Plaintiff exhibited no mental deficits in a mental status examination.  (TR 197).  The ALJ also properly considered Plaintiff's testimony concerning his daily activities.  Plaintiff testified that he goes to his treating clinic about three times a week to socialize, that he attends regular counseling sessions for anger management at the treating clinic, and that he also sees a therapist and the psychiatrist at the same clinic. (TR 268-269).  This testimony certainly supports the ALJ's reasoning that Plaintiff's activities were "somewhat limited" but "less restricted" than at the beginning of his treatment at the mental health clinic. (TR 20).  Dr. Al-Khouri's office notes and Plaintiff's own testimony provide ample support for the ALJ's reasoning that Plaintiff's "psychological symptoms appear to be controlled with treatment and medications." (TR 20).  Plaintiff's assertion that the ALJ relied on "mistaken observations" is not supported by specific references in the medical record, and the Plaintiff's conclusory assertion will therefore not be addressed.  No error occurred with respect to the ALJ's credibility determination.

In determining Plaintiff's RFC for work, the ALJ relied on the treating psychiatrist's records and the assessments of the agency's consultative reviewing physicians in determining Plaintiff's RFC for work. (TR 20-21).  There is substantial evidence in the record to support the ALJ's RFC determination.  Furthermore, the VE testified that there are jobs available in the economy which an individual with Plaintiff's RFC for work and vocational

characteristics can perform.  The VE's testimony provides substantial evidence to support the ALJ's conclusion that Plaintiff is not disabled within the meaning of the Social Security Act.  Accordingly, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before      February 8th   , 2007, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this      19th        day of      January , 2007.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

14